UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL SMITH, individually and
on behalf of others similarly situated, *et al.*

VERSUS

METRO SECURITY, INC. *et al.*

CIVIL ACTION

NO. 18-953

SECTION M (1)

## ORDER & REASONS

Before the Court are the post-trial briefs submitted on behalf of plaintiffs, Daniel Smith, Edward Johnson, Darren C. Norbert, Sr., Jauvon Berryhill, Tiffany Turner, Guy Bryant, and James Washington, Jr. (collectively, "Plaintiffs"),[1] and defendants Metro Security, Inc. and Lloyd Jarreau (collectively, "Defendants").[2] Also before the Court is a renewed motion for judgment as a matter of law, or alternatively, for new trial, submitted on behalf of Defendants as part of their response to Plaintiffs' post-trial brief.[3] Plaintiffs oppose Defendants' motion in their reply in support of their post-trial brief.[4] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

## I.    BACKGROUND

This case arises from a dispute about overtime compensation owed under the Fair Labor Standards Act ("FLSA"). Jarreau owned and operated Metro Security, Inc., a business providing security services in the New Orleans metropolitan area. Jarreau and Metro Security, Inc. employed Plaintiffs as "post supervisors," a position that generally required employees to surveil and protect a particular "post" or area.[5] Metro Security, Inc. provided these employees with Toyota vehicles,

---

[1] R. Docs. 76 & 81.
[2] R. Doc. 77.
[3] *Id.*
[4] R. Doc. 81.
[5] R. Docs. 43 at 2 & 70 at 1. The areas included neighborhoods, a university campus, and hotels and other places of business.

weapons, and radios for patrol.[6]  Post supervisors received a bi-weekly salary of $910, or $455 per week, regardless of the number of hours worked.[7]  Occasionally, post supervisors would receive a bonus when employees worked in excess of 80 hours in a pay period, but only when Metro Security, Inc. had funds available and chose to make such a payment.

On January 31, 2018, Smith, individually and on behalf of other similarly-situated individuals, sued Metro Security, Inc. and Jarreau, claiming that they willfully violated the FLSA for failing to pay post supervisors overtime.[8]  Smith alleged that he regularly worked 60 hours per week, resulting in payment below the minimum wage.[9]  The Court granted Smith's motion to conditionally certify the collective,[10] and the Defendants never moved to decertify.  On September 13, 2018, Johnson, Norbert, and Berryhill, opted into the collective.[11]  On September 24, 2018, Turner and Bryant opted in;[12] and on October 17, 2018, Washington did likewise.[13]

Two days before trial, Defendants filed a motion to dismiss the case for Plaintiffs' failure to state a claim.[14]  Defendants argued that Plaintiffs' allegation that "Defendants were an enterprise covered by the FLSA as defined by 29 U.S.C. §§ 203(r) and 203(s)" was insufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), because it lacked any factual assertion that Metro Security, Inc.'s annual gross revenues were at least $500,000.[15]  In response, Plaintiffs urged the Court to deny the motion to dismiss as untimely in violation of the scheduling order's deadline for dispositive motions.[16]  Plaintiffs also attached Defendants' interrogatory response, in which Defendants admitted that "in each of the three years preceding the date this suit was filed, Metro

---

[6] R. Doc. 43.
[7] *See* Exh. 1.
[8] R. Doc. 1.
[9] *Id.* at 3.
[10] R. Doc. 23.
[11] R. Docs. 29, 30, 31.
[12] R. Docs. 32 & 33.
[13] R. Doc. 34.
[14] R. Doc. 60.
[15] R. Doc. 60-4 at 2-3 (citing R. Doc. 1 ¶ 16).
[16] R. Doc. 67.

Security, Inc. had gross revenues at or above $500,000.00 per year."[17]  Having submitted matters outside of the pleadings but established in discovery, Plaintiffs urged the Court to treat the Rule 12(b)(6) motion as a motion for summary judgment and to deny the motion as such.[18]  The Court deferred ruling on the motion until trial.[19]

At the outset of trial, the Court denied Defendants' motion to dismiss for failure to state a claim on three grounds.[20]  First, the Court denied the Rule 12(b)(6) motion as untimely, having been filed well after the deadline for dispositive motions set by the Court's scheduling order.  Second, given Plaintiffs' attachment of evidence outside the pleadings in opposition to the motion, the Court converted the motion to dismiss to a motion for summary judgment under Rule 12(d).  The Court denied the motion for summary judgment because Defendants failed to establish that it was undisputed that Metro Security, Inc.'s annual gross revenues were less than $500,000 per year.  To be sure, as made plain by Defendants' admission, Defendants could not possibly do so since it was undisputed that Metro Security, Inc.'s annual gross revenues were at or above $500,000 per year.  Third, the Court also denied the motion to dismiss on the alternative ground that amendment of the complaint would be permitted to conform the pleadings to the evidence of Metro Security, Inc.'s gross revenues obtained in discovery, especially since Defendants were not prejudiced by the late amendment.

The case was tried to a jury on March 25-26, 2019.  Washington, Norbert, Bryant, and Smith testified in Plaintiffs' case; Jarreau and Angela Tucker, manager of Metro Security, Inc., testified for the defense.[21]  The parties stipulated that the hours and salaries indicated in Exhibit 1, which are reflected in payroll sheets also admitted into evidence, were accurate with the exception

---

[17] R. Docs. 67-1 at 4 & 67-2 at 1.
[18] R. Doc. 67 at 5.
[19] R. Doc. 64.
[20] R. Doc. 69.
[21] *See* R. Docs. 69 & 70.

of one typographical error that was amended by agreement.[22]  At the close of Plaintiffs' case and again at the close of all the evidence, the Court denied Defendants' motions for judgment as a matter of law, wherein Defendants re-urged the arguments made in their motion to dismiss and additionally argued that Berryhill, Turner, and Johnson should be dismissed for not being present to testify, and that Defendants were exempt from the FLSA.  After a few hours of deliberation, the jury returned a verdict in favor of Plaintiffs, finding that Defendants willfully violated the FLSA.[23]  After the verdict and after the jury was excused, Defendants again moved for judgment as a matter of law on the same grounds, and the Court took the motion under submission.[24]  The Court then ordered the parties to submit post-trial memoranda addressing the outstanding issues, including the question of damages to be determined by the Court.[25]

## II.    THE PARTIES' POST-TRIAL SUBMISSIONS

Defendants renew their motion for judgment as a matter of law urging that insufficient evidence existed to support the jury's verdict that they are engaged in interstate commerce.[26]  Defendants again argue that enterprise coverage was not properly pleaded in that an allegation of gross revenues in excess of $500,000 was absent from the complaint, thereby depriving the Court of subject-matter jurisdiction.[27]  Defendants further contend that their motion to dismiss was timely under Rules 12(h) and (i) of the Federal Rules of Civil Procedure; that amendment of the pleadings was improper under Rule 15(b)(2), "[t]he only authority for amending pleadings to conform them to evidence," because the Defendants did not consent to try the issue of enterprise coverage; and

---

[22] R. Doc. 70.  The entry for plaintiff Bryant's hours worked on December 10, 2015, incorrectly stated "257 hours"; the parties stipulated that the entry should be amended to reflect that Bryant actually worked 57 hours.  *See* Exh. 1 at 13.

[23] R. Docs. 70 & 71.

[24] R. Doc. 70.

[25] R. Doc. 74.  In the order, the Court directed the parties to address "any outstanding issues for the Court to determine *before entering judgment* (including at least the Court's determination of overtime hours, compensatory and liquidated damages, and attorney's fees and costs)."  *Id.* (emphasis added).

[26] R. Doc. 77-2 at 7.

[27] *Id.* at 7-10.

that summary judgment was improper "because there are genuine disputes of material fact regarding whether the defendants are an enterprise engaged in commerce."[28]   Additionally, Defendants argue that insufficient evidence existed to support the jury's finding of willfulness, pointing to Jarreau's testimony that he paid the minimum amount required by the FLSA for exempt employees, thus proving that Defendants took measures to ensure compliance with the FLSA.[29] In the event the renewed motion for judgment as a matter of law is denied, Defendants alternatively move for a new trial.[30]

In opposition, Plaintiffs contend that the Court properly denied Defendants' motion to dismiss on the grounds articulated by the Court at trial.  Plaintiffs note that Defendants mistakenly brief the issue as if the motion for summary judgment had been granted, when it was actually denied.  Plaintiffs also insist that Defendants never objected to evidence of enterprise coverage being outside the scope of the pleadings.  In fact, say Plaintiffs, Jarreau testified at trial that Metro Security, Inc. had revenues in excess of $500,000 in each relevant year, while also testifying that post supervisors used materials in the stream of commerce, such as firearms, ammunition, and vehicles.[31]   Plaintiffs characterize Defendants' motion to dismiss on the eve of trial as an attempt to have the Court "ignore the simple and [admitted-to] facts of the case in favor of a rigid pleading requirement that is meant as a 'gotcha.'"[32]   Finally, Plaintiffs contend that sufficient evidence existed to support the jury's determination that Defendants willfully violated the FLSA, reasoning that Jarreau's testimony about minimal compliance, when viewed in the context of his demeanor and attitude, supports the jury's finding that Defendants knowingly violated the FLSA.[33]

In their post-trial brief, Plaintiffs address the Court's determination of damages, seeking

---

[28] *Id.* at 11-13.
[29] *Id.* at 13-15.
[30] *Id.* at 1, 22.
[31] R. Doc. 81 at 1-4.
[32] *Id.* at 2.
[33] *Id.* at 4.

overtime, liquidated damages, attorney's fees and costs, and judicial interest.  First, Plaintiffs submit calculations of overtime owed to each plaintiff using the standard method based upon the hours and salaries stipulated as accurate in Exhibit 1.[34]  Because the jury found that Defendants willfully violated the FLSA, Plaintiffs argue that the Court must award liquidated damages.[35]  Plaintiffs next propose that the lodestar of $65,889.50 in attorney's fees is reasonable and contend that the *Johnson* factors do not warrant any reduction.  Plaintiffs also submit that $847.50 have been incurred in costs.[36]  Finally, Plaintiffs ask that the Court hold Jarreau, whom the jury found to be Plaintiffs' employer together with Metro Security, Inc., individually and jointly liable to Plaintiffs in the judgment to be entered.[37]

Defendants make no objection to Plaintiffs' overtime calculations.  Defendants solely challenge Plaintiffs' calculation of attorney's fees, arguing that various rates were excessive in light of the attorneys' lack of experience in litigating employment claims, that certain time entries were too vague to allow recovery, that certain services were duplicative or nonessential and hence not recoverable, and that the claimed hours should be reduced for lack of billing judgment.[38]

In reply, Plaintiffs contend that the invoice entries were sufficiently descriptive though drafted to protect attorney-client privilege, and that time spent traveling for trial-related matters is recoverable.[39]  Finally, Plaintiffs acknowledge that the May 23, 2018 entry for attorney Estes listed the incorrect rate per hour, so the claimed fees for Estes Davis Law, LLC should be reduced from $20,575 to $20,445.[40]

---

[34] R. Doc. 76 at 1-4 (citing R. Docs. 76-1 & 76-2).
[35] *Id.* at 5-6.
[36] *Id.* at 6-9.
[37] *Id.* at 9.
[38] R. Doc. 77-2 at 16-22.
[39] R. Doc. 81 at 5-7 (citing *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 627 (W.D. Tex. 2015)).
[40] *Id.* at 7.

III.    **LAW & ANALYSIS**

    A.  **Motion and Renewed Motion for Judgment as a Matter of Law**

        Rule 50 of the Federal Rules of Civil Procedure requires a party to "specify the judgment sought and the law and facts that entitle the movant to the judgment" upon motion at trial before the jury renders its verdict.  Fed. R. Civ. P. 50(a)(2); *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019).  "If the pre-verdict motion is denied, then the party can renew its motion under Rule 50(b).  But the renewed Rule 50(b) is 'technically only a renewal of the [Rule 50(a) motion for judgment as a matter of law].'"  *Puga*, 922 F.3d at 290 (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985)) (bracketed language in original).  Judgment as a matter of law under Rule 50 is warranted only where "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes reasonable jurors could not arrive at a contrary verdict."  *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 248-49 (5th Cir. 2005) (quoting *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997)) (citing Fed. R. Civ. P. 50(a)).  Thus, to prevail on a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [its] claim."  *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th Cir. 2011)).  "'Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

        Rule 50(b) provides in part: "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  After the verdict and after the jury was excused, Defendants orally re-urged their motion for judgment as a matter

of law on the same grounds they articulated pre-verdict, and the Court took the motion under submission.[41]  To the extent this Court left open Defendants' post-verdict motion, the Court now denies the motion for the same reasons it denied Defendants' eve-of-trial motion to dismiss and their pre-verdict motions for judgment as a matter of law.  Moreover, the Court denies this motion for the additional reason that the Federal Rules of Civil Procedure do not provide for a post-verdict, prejudgment motion for judgment as a matter of law, so it amounts to a premature Rule 50(b) motion, as explained below.  The Court also finds that there was a legally sufficient evidentiary basis at trial for a reasonable jury to find in Plaintiffs' favor on each of the FLSA claims.

Rule 50(b) further provides that a party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  While Defendants have filed such a motion, it is premature.  Rule 50(b) specifies that the renewed motion is to be filed "[n]o later than 28 days after the entry of judgment."  Because judgment has not yet been entered, the Court will not now address the issues raised by the Defendants' renewed motion for judgment as a matter of law, and therefore denies the motion as premature, without prejudice to Defendants' right to re-file the motion within the prescribed time following the Court's entry of judgment.[42]  *See Hope for Families & Cmty. Serv., Inc. v. Warren*, 2012 WL 13015103, at *2 (M.D. Ala. June 12, 2012) ("a Rule 50(b) renewed motion for judgment as a matter of law made after the jury verdict, but before final judgment, is premature"); *Hogan v. Gen. Elec. Co.*, 144 F. Supp. 2d 138, 144 (N.D.N.Y. 2011) (same).  After all, in the Court's post-verdict order, it asked

---

[41] R. Doc. 70.

[42] In light of the foregoing conclusion, the Court does not reach Defendants' argument that inadequate pleading of enterprise coverage deprives the Court of jurisdiction.  However, even if this ground were properly before the Court, the Court rejects it.  "[C]overage under the FLSA is not a jurisdictional prerequisite, but is rather an element of [a plaintiff's] FLSA claim."  *Pineda v. JTCH Apartments, LLC*, 2015 WL 5052241, at *5 (N.D. Tex. Aug. 26, 2015) (citing *Lopez-Santiago v. Coconut Thai Grill*, 2014 WL 840052, at *3 (N.D. Tex. Mar. 4, 2014), and *Morrow v. J W Elec., Inc.*, 2011 WL 5599051, at *1 (N.D. Tex. Nov. 16, 2011)); *see also Villamizar v. Action Landscaping, Inc.*, 2015 WL 338947 (S.D. Tex. Jan. 23, 2015) (denying motion to dismiss for lack of subject-matter jurisdiction for failure to show defendants were an enterprise engaged in commerce within the meaning of the FLSA) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.")).

the parties to address only those issues left to be determined before the Court could enter judgment.[43]  These issues (*viz,* "the Court's determination of overtime hours, compensatory and liquidated damages, and attorney's fees and costs") will now be addressed by the Court.

### B.  Overtime

"The FLSA sets the standard workweek at forty hours and requires employers to pay non-exempt employees no less than one and one-half times their regular rate of pay for any hours worked in excess of forty."  *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) (citing 29 U.S.C. § 207(a)(1)).  "The FLSA broadly defines 'regular rate' as the hourly rate actually paid the employee for 'all remuneration for employment.'"  *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (citing 29 U.S.C. § 207(e) and *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944)).  "Ordinarily, determining the regular rate entails a straightforward 'mathematical computation' based on 'the amount of wages and the mode of payment' agreed to by the parties."  *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 800 (N.D. Tex. 2015) (quoting *Gagnon*, 607 F.3d at 1041).  "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.  Here, the parties have stipulated that the hours and salaries recorded in Exhibit 1, with one amendment, are accurate.[44]  Thus, the regular rate of pay shall be determined for each plaintiff using these figures.[45]

Next, the Court must determine which method to apply in calculating the overtime premium.  "After the trier of fact has found that a misclassified employee is due overtime pay, the

---

[43] R. Doc. 74.

[44] R. Doc. 70.  Page 13 is amended to reflect that on December 10, 2015, plaintiff Bryant worked 57 hours rather than 257 hours.  *Id.*

[45] The regular rate of pay does not include discretionary bonuses.  29 U.S.C. § 207(e)(3).  The jury found that any bonuses Defendants paid to Plaintiffs were discretionary.  R. Doc. 70-1.  Therefore, the Court excludes the bonuses listed in Exhibit 1 from the calculation of the regular rate.

court must determine as a matter of law whether to apply the standard method of calculating the overtime pay using the one and one-half times the regular rate of pay multiplier found in the FLSA, or to apply the [fluctuating workweek] multiplier of only one-half of the regular rate of pay." *Black*, 732 F.3d at 496.  The fluctuating workweek method applies where an employee receives a fixed salary for hours that fluctuate from week to week.  29 C.F.R. § 778.114.  As explained in the regulations, the fluctuating workweek method is the exception to the standard method, for the fluctuating workweek method does not apply

> unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the [FLSA], and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked.

*Id.* § 778.114(c).  Plaintiffs contend that the fluctuating workweek method is inappropriate because Plaintiffs did not earn the minimum wage of $7.25/hour in numerous weeks,[46] and because there was no agreement between any of the Plaintiffs and Defendants that a fixed salary would be paid regardless of the hours worked.[47]  Defendants provide no opposition to Plaintiffs' proposal to use the standard method.  Accordingly, in this case the Court will apply the standard method for calculating overtime pay.

Applying the standard method to the hours and salaries reflected in Exhibit 1 (as amended), the Court will now calculate Plaintiffs' regular rate of pay and overtime premiums.  Plaintiffs Smith, Norbert, Turner, Bryant, and Washington were paid a fixed bi-weekly salary of $910 for 40 hours worked each week.  Therefore, these Plaintiffs' weekly salary was $455.  The weekly salary ($455) divided by 40 hours results in a regular rate of $11.37 per hour.  The overtime rate,

---

[46] *See* 29 U.S.C. § 206(a)(1) (minimum wage set at not less than $7.25 an hour for the applicable period here); R. Doc. 76-1.
[47] R. Doc. 76 at 2-3.

one and one-half times $11.37, is $17.05.[48]  Plaintiff Berryhill was paid a bi-weekly salary of $910

for 40 hours worked each week through July 21, 2016, and then a bi-weekly salary of $960 for 40

hours worked each week thereafter.  Thus, Berryhill's regular rate through July 21, 2016, was

$11.37 per hour (*i.e.*, his weekly salary of $455 divided by 40 hours) and his overtime rate for this

period was $17.05 per hour (*i.e.*, one and one-half times $11.37).  Berryhill's regular rate after the

July 21, 2016 pay period was $12.00 per hour (*i.e.*, his weekly salary of $480 divided by 40 hours)

and his overtime rate was $18.00 (*i.e.*, one and one-half times $12.00).

While Defendants stipulated to the hours and salaries reflected in Exhibit 1 (as amended),

and though they have not challenged in any way Plaintiffs' sums and overtime calculations using

these numbers, the Court has a duty to review these calculations and to make certain adjustments

to the overtime hours claimed by Plaintiffs, if warranted.  Adjustments are indeed required.  First,

the Court independently derived the arithmetical sum of the total number of overtime hours for

each Plaintiff recorded in Exhibit 1, and the Court's sums differ slightly from those of Plaintiffs

(as reflected in the chart below).  Second, for certain of the Plaintiffs, it was then necessary to

subtract those hours that fell outside a three-year statute-of-limitations period.  *See*, *e.g.*, *Claeys v.

Gandalf, Ltd.*, 303 F. Supp. 2d 890, 895 (S.D. Ohio 2004) (claims for unpaid overtime

compensation accruing prior to statute-of-limitations period were barred).  A three-year period

applies because the jury found that Defendants' violation of the FLSA was willful.  29 U.S.C. §

255(a) (claim "arising out of willful violation may be commenced within three years after cause

of action accrued"); *Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003).  "Generally, a cause

of action under the FLSA accrues on each regular payday immediately following the work period

during which the services were rendered for which the overtime pay is claimed."  *Wanken v.

Wanken*, 2013 WL 1828840, at *4 (N.D. Tex. May 1, 2013) (citing *Halferty v. Pulse Drug Co.*,

---

[48] The Court uses the figures derived by Plaintiffs and unchallenged by Defendants.  *Id.* at 3; R. Doc. 77-2.

821 F.2d 261, 271 (5th Cir. 1987)).  The three-year period is measured from the date each of the

affected Plaintiffs opted into the collective (*i.e.*, September 13, 2018, for Norbert, Johnson, and

Berryhill; and September 24, 2018, for Bryant).  *See Claeys*, 303 F. Supp. 2d at 895 (bar date

measured from date on which plaintiff filed consent form to join FLSA collective action).  Thus,

the overtime hours of Norbert, Johnson, and Berryhill before September 13, 2015, and those of

Bryant before September 24, 2015, must be subtracted from the total number of overtime hours

for each of these Plaintiffs, to derive the total number of recoverable hours (as reflected in the chart

below):

| Plaintiff | Overtime Hours Calculated by Plaintiffs | Overtime Hours Calculated by the Court | Overtime Hours Excluded by Statute of Limitations | Recoverable Overtime Hours |
|---|---|---|---|---|
| Daniel Smith | 270.5 | 275.5 | -- | 275.5 |
| Edward Johnson | 2202.0 | 2192.0 | 522.0 | 1670.0 |
| Darren C. Norbert, Sr. | 2078.5 | 2117.0 | 436.5 | 1680.5 |
| Jauvon Berryhill | 691.5 | 706.0[49] | 58.5 | 647.5[50] |
| Tiffany Turner | 158.0 | 168.0 | -- | 168.0 |
| Guy Bryant | 1395.0 | 1423.5 | 400 | 1023.5 |
| James Washington, Jr. | 502.5 | 502.5 | -- | 502.5 |

These recoverable overtime hours are then multiplied by the applicable overtime rate for each

Plaintiff to determine the total amount of overtime compensation owed:

---

[49] Of these hours, Berryhill logged 354 overtime hours before his weekly salary increased from $455 to $480, and 352 thereafter.

[50] Of these hours, 295.5 (*i.e.*, 354 minus 58.5) were logged at the overtime rate of $17.05 and 352 at $18.00, as calculated above.

| Plaintiff | Overtime Premium | Recoverable Overtime Hours | Overtime Compensation Owed |
|---|---|---|---|
| Daniel Smith | $17.05 | 275.5 | $4,697.27 |
| Edward Johnson | $17.05 | 1670.0 | $28,473.50 |
| Darren C. Norbert, Sr. | $17.05 | 1680.5 | $28,652.52 |
| Jauvon Berryhill | $17.05; $18.00 | 295.5; 352.0 | $11,374.27 ($5,038.27; $6,336.00) |
| Tiffany Turner | $17.05 | 168.0 | $2,864.40 |
| Guy Bryant | $17.05 | 1023.5 | $17,450.67 |
| James Washington, Jr. | $17.05 | 502.5 | $8,567.62 |
| **TOTAL** | | | **$102,080.25** |

Therefore, the total amount of overtime compensation owed to and recoverable by Plaintiffs is $102,080.25.

### C. Liquidated Damages

An employer that violates the FLSA by failing to pay overtime is liable to pay the unpaid overtime compensation as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A court has discretion to decline to award liquidated damages where "the court concludes that the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied with the FLSA." *Singer*, 324 F.3d at 822-23 (quoting 29 U.S.C. § 260). "[A]n employer 'faces a substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Id.* at 823 (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)). Where a jury finds that an employer's violation of the FLSA was willful, the employer cannot show that it acted in good faith, and the court must award liquidated damages. *Id.* Here, the jury found that Defendants willfully violated the FLSA. As a consequence, the Court must award as liquidated damages an amount equal to the amount awarded for overtime compensation,

or $102,080.25.  The total amount of damages, then, is $204,160.50 (*i.e.*, $102,080.25 in overtime compensation plus $102,080.25 in liquidated damages).

### D.  Attorney's Fees and Costs

An employer found liable under the FLSA is liable for reasonable attorney's fees and costs. 29 U.S.C. § 216(b).  In calculating the appropriate fee, "the 'lodestar' calculation is the most useful starting point."  *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012) (trademark case) (quotation omitted); *see Black*, 732 F.3d at 502 (FLSA case).  That is, a court must determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The lodestar determination is presumed reasonable, but may be adjusted upward or downward depending on the weight a court allots to the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[51]  As the party requesting fees, Plaintiffs bear the burden of establishing the reasonableness of the fees and costs they request by submitting adequate documentation – namely, time records, affidavits, and the like.  *Who Dat Yat Chat,* 838 F. Supp. 2d at 518.  Plaintiffs request $65,759.50 in attorney's fees and $847.50 in costs.[52]

The lodestar analysis in this case requires a determination of the hours reasonably expended

---

[51] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  However, the Supreme Court and Fifth Circuit have stated that several of the *Johnson* factors – namely, the complexity of the issues, the results obtained, the special skill and experience of counsel, and the preclusion of other employment – are fully reflected and subsumed in the lodestar amount.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Shipes v. Trinity Indus.*, 987 F.2d 311, 322 (5th Cir. 1993).  Of these factors, "the Fifth Circuit has singled out four of the factors as most important: (1) the time and labor involved; (2) the customary fee; (3) the amount involved and the results obtained; and (4) the experience, reputation, and ability of counsel."  *Dinet v. Hydril Co.,* 2006 WL 3904991, at *6 (E.D. La. 2006) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

[52] These amounts include the fees and costs Plaintiffs had already incurred at the time they filed their post-trial memorandum but include no additional fees that Plaintiffs could have reasonably anticipated they would incur in replying to Defendants' post-trial filings.  The amount for attorney's fees reflects a decrease of $130 from Plaintiffs' original request of $65,889.50, as corrected by Plaintiffs in their reply memorandum.  *See infra* note 55.

by Plaintiffs as well as an appropriate hourly rate in the local market.  *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-83 (5th Cir. 2011) (applying rates applicable where district court sits rather than rates applicable to attorney's place of work absent limited circumstances, such as a showing that out-of-district counsel was necessary to the litigation).  According to the affidavits and billing records submitted, Plaintiffs used the services of five attorneys and one paralegal: James Bullman, an attorney with five years of experience, charged a rate of $275 per hour, both while an associate at the law firm of Estes Davis Law, LLC and as owner of the Bullman Law Firm, which he formed during the course of this litigation;[53]  Daniel Davis, a partner at Estes Davis Law with 15 years of experience, billed Plaintiffs at $375 per hour;[54]  Randall Estes, another partner at Estes Davis Law with 25 years of experience, also billed Plaintiffs at $375 per hour;[55]  Dale Baringer, a partner at the Baringer Law Firm II, LLC,  with at least 38 years of experience, billed Plaintiffs at $300 per hour; William Caldwell, an associate at the Baringer firm with approximately six months of experience, billed Plaintiffs at $125 per hour; and Elizabeth Baringer, a paralegal at the Baringer firm with approximately seven years of experience, charged $85 per hour.[56]

Defendants oppose Plaintiffs' request for attorney's fees for Plaintiffs' failure to show that any of the attorney's fees reflect reasonable rates or hours.[57]  First, Defendants contend that Plaintiffs' affidavits are insufficient to establish the reasonableness of the rates where Plaintiffs fail to offer proof of rates paid and billed for similar lawsuits in the same market.[58]  While an attorney's affidavit alone cannot support a rate's reasonableness, *see Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("the burden is on the fee applicant to produce satisfactory evidence – in

---

[53] R. Docs. 76-3 & 76-4.

[54] R. Doc. 76-4.

[55] *Id.*  As noted by Defendants in their opposition, the May 23, 2018 entry of the Estes Davis Law invoice billed Estes' rate at $400 per hour rather than $375.  *Id.* at 6; 77-2 at 21; 81 at 7.  Plaintiffs acknowledge the error and requested a reduction in accordance with the correct rate of $375 per hour.  As a result, Plaintiffs seek $20,445 in attorney's fees for the services rendered by Estes Davis Law rather than $20,575.  R. Doc. 81 at 7.

[56] R. Doc. 76-5.

[57] R. Doc. 77-2 at 16-22.

[58] *Id.* at 16.

addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"), courts in the Fifth Circuit also employ their "'own knowledge and experience concerning reasonable and proper fees and may form an independent judgment without the aid of witnesses as to value.'" *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 n.1 (E.D. La. 2009) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).  Defendants argue, without citing any supporting authority, that the affidavits offered by Plaintiffs are insufficient for the Court to conduct a lodestar analysis because the affidavits do not indicate whether the invoices have been paid and thus cannot be customary.[59]  However, the Court is unaware of any requirement that proof of payment for past services must be produced.

Next, Defendants contend that Plaintiffs cannot recover attorney's fees incurred by Estes or Caldwell because neither submits an affidavit.[60]  Rather, Plaintiffs submit an affidavit of Davis on behalf of his partner, Estes, for fees charged by Estes Davis Law;[61] and an affidavit of Baringer on behalf of his associate and paralegal for fees charged by the Baringer Law Firm II.[62]  It is enough that Davis' and Baringer's affidavits, together with Plaintiffs' other submissions, provide the essential information concerning the hourly rates, title, role, qualifications, and special skills of the attorneys and paralegal who provided services.  This information is contained in the affidavits and the law firm invoices Plaintiffs submitted in support of the request.  Courts frequently award fees for other firm professionals based on an affidavit submitted by a single firm representative.  The Court declines to impose any greater requirement here.

Defendants challenge each attorney's rate as excessive in light of his lack of experience in FLSA litigation.[63]  Defendants contend that $200 per hour is a reasonable rate for Bullman; that

---

[59] *Id.* at 18.
[60] *Id.*
[61] R. Doc. 76-4.
[62] R. Doc. 76-5.
[63] R. Doc. 77-2 at 16-18.

Davis' rate of $375 is unsupported by any case law showing an attorney with 15 years of experience has been awarded such a rate; that the billing rate of $300 per hour for Baringer, the most experienced of Plaintiffs' attorneys with 38 years of experience, undermines the reasonableness of the other rates; and that even Baringer's rate is unreasonable because, despite his expertise in taxation, "he is not especially experienced in handling Fair Labor Standards Act claims."[64]  Defendants also assert that "[t]he plaintiffs' use of five attorneys … in this litigation was unnecessary and led to an unnecessarily and unreasonably inflated claim for attorney fees."[65]

The Court is convinced that the hourly rates of Davis, Estes, Baringer, and Caldwell fall within the range of rates allowed by other courts in this district, albeit on the higher end of that range.  *See EnVen Energy Ventures, LLC v. Black Elk Enerergy Offshore Operations, LLC*, 2015 WL 3505099, at *2-3 (E.D. La. June 3, 2015) (finding rates of $325 per hour for partner/shareholder with 20 years of experience, $300 per hour for an associate with 10 years of experience, and $275 per hour for an associate with seven years of experience to be reasonable); *Wagner v. Boh Bros. Constr. Co., LLC*, 2012 WL 3637392, at *15 (E.D. La. Aug. 22, 2012) (finding rates of $275 per hour for partner/shareholder with 10 years of experience, and $235 per hour for an associate with four years of experience to be reasonable); *Foley v. SAFG Ret. Servs., Inc.*, 2012 WL 956499, at *2 (E.D. La. Mar. 20, 2012) (finding rates of $350 per hour for partner/member of firm with over 30 years of experience, and $275 per hour for associate with over eight years of experience to be reasonable); *Johnson*, 639 F. Supp. 2d at 701-02 (E.D. La. 2009) (finding rates of $300 per hour for partners, $225 per hour for associates, and $75 per hour for paralegals to be within the customary range of rates in the New Orleans area); *Oreck Direct, LLC v. Dyson, Inc.*, 2009 WL 961276, at *6 (E.D. La. Apr. 7, 2009) ("The Court is familiar with the local legal market and notes that the top rate for partner-level attorneys here is between $400

---

[64] *Id.* at 17.
[65] *Id.* at 18.

and $450 per hour."); *Bd. of Supervisors of La. State Univ. v. Smack Apparel Co.*, 2009 WL 927996, at *4 & *7 (E.D. La. Apr. 2, 2009) (finding that $325 was a reasonable hourly rate for an attorney with 10 years of experience in a specialty practice and for an attorney with 29 years of unspecialized legal experience).  Baringer's lack of specialized experience in FLSA litigation does not compromise the value of his breadth of experience in litigation – experience that other attorneys working on the case lacked.  For this reason and given the variety of experiences that each attorney contributed to the success of the case, the Court finds that the requested rates of Davis, Estes, Baringer, and Caldwell are reasonable and recoverable.

As to Bullman, Defendants argue that his five years' experience in various areas of employment law does not warrant a rate of $275 per hour, especially given that Bullman confessed this case to be his first jury trial.  Defendants contend that $200 per hour is a reasonable rate for Bullman, citing *Calix v. Ashton Marine LLC,* 2016 WL 4194119 (E.D. La. July 14, 2016).[66]  In that FLSA case, the court reduced plaintiff counsel's request for $250 per hour to $200 per hour, considering counsel's non-specialized experience of five years in "criminal law, personal injury, worker's compensation, discrimination, class actions and the FLSA" to warrant the reduction.  *Id.* at *4-5.  Like counsel in *Calix*, the majority of Bullman's five years' experience is broad-ranged and not specialized, including construction law, oil-and-gas matters, business and commercial litigation, real estate, and employment.  Not until July 2017 did Bullman begin to specialize in labor-and-employment law, when he managed the labor-and-employment section of the Estes Davis law firm, and then opened his own practice in June 2018 focusing on this specialty.[67]  As a result, the Court finds $250, not the requested $275, to be a reasonable hourly rate for Bullman.  *See*, *e.g.*, *Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 509-11 (E.D. La. 2018) (rejecting requested hourly rate of $300 as unreasonable but finding rate of $275 reasonable for

---

[66] *Id.* at 16-17.
[67] R. Docs. 76 at 7 & 76-3.

lawyer with 16 years of experience); *Banegas v. Calmar Corp.*, 2016 WL 6276779, at *2 (E.D. La. Oct. 26, 2016) (finding hourly rate of $250 to be reasonable for FLSA work in the New Orleans community).

Defendants also argue that the number of hours expended by Plaintiffs' counsel were unreasonable. Specifically, Defendants assert that the invoices submitted by Plaintiffs do not reflect billing judgment because there is no documentation of write-offs, because several entries were vague and duplicative, and because certain entries inappropriately charged for the attorneys' travel time.[68] "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to prove billing judgment. *Id.*; *La. Power & Light Co.*, 50 F.3d at 324. A court also has discretion to reduce travel time, and courts in the Fifth Circuit customarily reduce such hours by 50%. *See, e.g.*, *Alex*, 125 F. Supp. 3d at 627 (FLSA attorney's fees reduced for travel time by roughly 50% where no work was demonstrated to be achieved in transit).

As to entries allegedly vague and duplicative, the Court is satisfied that the time entries in the invoices reflect a sufficient level of detail and description to advise of reasonable services rendered. On the other hand, certain entries include travel time and employ block billing that understandably raise concerns about the duration of the substantive-versus-nonsubstantive

---

[68] R. Doc. 77-2 at 19-22.

services rendered and billing judgment.  For instance, the Estes Davis Law invoices charge 5.2 hours at the regular rates for both Bullman and Estes for having: "Traveled to New Orleans for Hearing on Motion for Conditional Certification.  Attended hearing for same.  Returned to Baton Rouge."[69]  Similarly, the invoice of the Baringer Law Firm bills at Baringer's regular rate for "Travel to and from New Orleans for and attendance at trial on the merits."[70]  These block entries combine the amount of time spent traveling with time spent in court and so mask what time was spent in nonproductive travel.  In contrast, invoices of the Bullman Law Firm reflect separate entries for travel time and time spent in court.[71]  Accordingly, the Court shall reduce by up to half the number of recoverable hours billed by the Estes Davis and Baringer law firms for each block entry reflecting travel time, and the Court shall likewise reduce the number of recoverable hours for each entry reflecting travel time in the invoices of the Bullman firm.  No other reductions are made for billing judgment, and the Court finds that all remaining hours for legal services provided to Plaintiffs are reasonable in light of the issues raised in this case.

Plaintiffs thus ask the Court to award attorney's fees in the amount of $31,262.00 for services performed by the Bullman Law Firm.  The request includes $35.75 in postage that, as an expense and not a service, should be excluded from the fee request, reducing the amount to $31,226.25 in fees.  Once Bullman's hourly rate is reduced to $250 and multiplied by the hours he worked (113.55), this amount becomes $28,387.50.  And then reducing by half the hours shown for entries recorded for travel time, an additional $631.25 should be subtracted, yielding recoverable fees for the Bullman Law Firm of $27,756.25.  Plaintiffs originally asked the Court to award an additional $20,575.00 in fees for the work of the Estes Davis law firm, but reduced the request to $20,445.00 in response to a billing error identified by Defendants.[72]  Again, once

---

[69] R. Doc. 76-4 at 6.
[70] R. Doc. 76-5 at 5.
[71] R. Doc. 76-3 at 6-7.
[72] R. Doc. 81 at 7.

Bullman's hourly rate is reduced to $250 from the requested $275 (a difference of $25) and multiplied by the hours he worked at the firm (52.8, not the 83 stated in the affidavit), the requested amount is adjusted downward by another $1,320.00 to $19,125.00.  Reducing by half the hours shown for travel time, an additional $1,000.00 is subtracted,[73] yielding an amount of recoverable fees for the Estes Davis firm of $18,125.00.  Plaintiffs also ask the Court to award an additional $14,052.50 in fees for work performed by the Baringer law firm.  Reducing by half the hours shown for travel time, the amount of $2,000.00 should be subtracted from this total,[74] yielding an amount of recoverable fees for the Baringer firm of $12,052.50.  Thus, the total of recoverable fees using the lodestar is $57,933.75 ($27,756.25 plus $18,125.00 plus $12,052.50).  The *Johnson* factors (which the Court has reviewed even though they were not analyzed by the parties) do not warrant a departure from the lodestar or any additional reductions.

In addition to their fee request, Plaintiffs ask the Court to award $847.50 in costs, comprised of two expenses incurred by the Estes Davis law firm, a court filing fee of $400.00 and another $447.50 expended for service of process.  These are recoverable costs.  An additional $35.75 in costs were incurred by the Bullman Law Firm for postage in mailing the notice of the collective action.  This too is a recoverable cost.  Accordingly, the Court finds that $883.25 in costs incurred by Plaintiffs were reasonable both in terms of their amount and nature.

In sum, the Court awards the total amount of $58,817.00 in fees and costs, finding them to be reasonable and appropriate.

### E.  Interest

Plaintiffs ask for "judicial interest from the date of the filing of this matter until paid."[75]  In the Fifth Circuit, prejudgment interest is not allowed for actions brought under section 216(b) of

---

[73] The $1,000.00 is a rough figure used to approximate the travel time included in the block entries on the invoices.

[74] The $2,000.00 is a rouge figure used to approximate the travel time included in the block entries on the invoices.

[75] R. Doc. 76 at 10.

the FLSA.  *See Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993) (citing

*Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 715-16 (1945)).  However, post-judgment interest

is allowable of right under 28 U.S.C. § 1961(a) from the date of judgment.  *See Reeves v. Int'l Tel.*

*& Tel. Corp.*, 705 F.2d 750, 751-52 (5th Cir. 1983).

### F.  Individual and Joint Liability

Finally, Plaintiffs request that Jarreau be found both individually and jointly liable for the

judgment under 29 C.F.R. § 791.2(a), which requires "joint employers" to be "responsible, both

individually and jointly, for compliance with all of the applicable provisions of the act, including

the overtime provisions, with respect to the entire employment for the particular workweek."

Under the FLSA, a joint employment relationship exists where "the facts establish that the

employee is employed jointly by two or more employers, i.e., that employment by one employer

is not completely disassociated from employment by the other employer(s)."  *Id.*  In the Fifth

Circuit, an employment relationship is established under the economic realities test, which

considers "whether the alleged employer: (1) possessed the power to hire and fire the employees,

(2) supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employment records."  *Orozco v.*

*Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).

Plaintiffs argue that because the jury found Jarreau to be an employer of Plaintiffs, he

should be considered a joint employer and thus individually and jointly liable with Metro Security,

Inc. for the judgment.  The Court agrees that Jarreau and Metro Security, Inc. are joint employers.

At trial, Jarreau testified to being the owner and operator of Metro Security, Inc.  Furthermore, the

Court instructed the jury on the economic realities test, and the jury found that Jarreau was an

employer of each of the Plaintiffs.[76]   Therefore, Jarreau should be held individually and jointly

---

[76] R. Docs. 71 at 7-8 & 70-1 at 1.

liable for the entirety of the judgment.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion for judgment as a matter of law, or, alternatively, for new trial (R. Doc. 77), is DENIED as premature without prejudice to Defendants re-urging it after judgment is entered.

IT IS FURTHER ORDERED that the Plaintiffs are awarded damages in the total amount of $204,160.50, plus post-judgment interest; and

IT IS FURTHER ORDERED that Plaintiffs are awarded attorney's fees and costs in the total amount of $58,817.00, plus post-judgment interest.

In a separate document, the Court will enter a final judgment in favor of Plaintiffs and against Defendants Metro Security, Inc., and Lloyd Jarreau, individually and jointly, based on the jury verdict and this Order.

New Orleans, Louisiana, this 29th day of July, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE