UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL SMITH, individually and                   CIVIL ACTION
on behalf of others similarly situated, et al.

VERSUS                                           NO. 18-953

METRO SECURITY, INC. et al.                      SECTION M (1)

## ORDER & REASONS

Before the Court is a renewed motion for judgment as a matter of law and motion for new

trial, submitted on behalf of Metro Security, Inc. and Lloyd Jarreau (collectively, "Defendants").[1]

Plaintiffs, Daniel Smith, Edward Johnson, Darren C. Norbert, Sr., Jauvon Berryhill, Tiffany

Turner, Guy Bryant, and James Washington, Jr. (collectively, "Plaintiffs") oppose Defendants'

motions.[2]  Defendants filed a reply in support of the motions.[3]  Having considered the parties'

memoranda and the applicable law, the Court issues this Order & Reasons denying the motions.

## I.      BACKGROUND

This case arises from a dispute about overtime compensation owed under the Fair Labor

Standards Act ("FLSA").  Jarreau owned and operated Metro Security, Inc., a business providing

security services in the New Orleans metropolitan area.  Jarreau and Metro Security, Inc. employed

Plaintiffs as "post supervisors," a position that generally required employees to surveil and protect

a particular "post" or area.[4]  Metro Security, Inc. provided these employees with Toyota vehicles,

weapons, and radios for patrol.[5]  Post supervisors received a bi-weekly salary of $910, or $455 per

---

[1] R. Doc. 84.
[2] R. Doc. 85.
[3] R. Doc. 88.
[4] R. Docs. 43 at 2 & 70 at 1.  The areas included neighborhoods, a university campus, and hotels and other places of business.
[5] R. Doc. 43.

week, regardless of the number of hours worked.[6]  Occasionally, post supervisors would receive a bonus when employees worked in excess of 80 hours in a pay period, but only when Metro Security, Inc. had funds available and chose to make such a payment.

On January 31, 2018, Smith, individually and on behalf of other similarly-situated individuals, sued Metro Security, Inc. and Jarreau, claiming that they willfully violated the FLSA by failing to pay post supervisors overtime.[7]  Smith alleged that he regularly worked 60 hours per week, resulting in pay below the minimum wage.[8]  The Court granted Smith's motion to conditionally certify the collective,[9] and the Defendants never moved to decertify.  On September 13, 2018, Johnson, Norbert, and Berryhill, opted into the collective.[10]  On September 24, 2018, Turner and Bryant opted in;[11] and on October 17, 2018, Washington did likewise.[12]

Two days before trial, Defendants filed a motion to dismiss the case for Plaintiffs' failure to state a claim.[13]  Defendants argued that Plaintiffs' allegation that "Defendants were an enterprise covered by the FLSA as defined by 29 U.S.C. §§ 203(r) and 203(s)" was insufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), because it lacked any factual assertion that Metro Security, Inc.'s annual gross revenues were at least $500,000.[14]  In response, Plaintiffs urged the Court to deny the motion to dismiss as untimely in violation of the scheduling order's deadline for dispositive motions.[15]  Plaintiffs also attached Defendants' interrogatory response in which Defendants admitted that "in each of the three years preceding the date this suit was filed, Metro Security, Inc. had gross revenues at or above $500,000.00 per year."[16]  Having submitted matters

---

[6] *See* Exh. 1.
[7] R. Doc. 1.
[8] *Id.* at 3.
[9] R. Doc. 23.
[10] R. Docs. 29, 30, 31.
[11] R. Docs. 32 & 33.
[12] R. Doc. 34.
[13] R. Doc. 60.
[14] R. Doc. 60-4 at 2-3 (citing R. Doc. 1 ¶16).
[15] R. Doc. 67.
[16] R. Docs. 67-1 at 4 & 67-2 at 1.

outside of the pleadings but established in discovery, Plaintiffs urged the Court to treat the Rule 12(b)(6) motion as a motion for summary judgment and to deny the motion as such.[17] The Court deferred ruling on the motion until trial.[18]

At the outset of trial, the Court denied Defendants' motion to dismiss for failure to state a claim on three grounds.[19] First, the Court denied the Rule 12(b)(6) motion as untimely, having been filed well after the deadline for dispositive motions set by the Court's scheduling order. Second, given Plaintiffs' attachment of evidence outside the pleadings in opposition to the motion, the Court converted the motion to dismiss to a motion for summary judgment under Rule 12(d). The Court denied the motion for summary judgment because Defendants failed to establish that it was undisputed that Metro Security, Inc.'s annual gross revenues were less than $500,000 per year. To be sure, as made plain by Defendants' admission, Defendants could not possibly do so since it was undisputed that Metro Security, Inc.'s annual gross revenues were at or above $500,000 per year. Third, the Court also denied the motion to dismiss on the alternative ground that amendment of the complaint would be permitted to conform the pleadings to the evidence of Metro Security, Inc.'s gross revenues obtained in discovery, especially since Defendants were not prejudiced by the late amendment.

The case was tried to a jury on March 25-26, 2019. Washington, Norbert, Bryant, and Smith testified in Plaintiffs' case; Jarreau and Angela Tucker, manager of Metro Security, Inc., testified for the defense.[20] The parties stipulated that the hours and salaries indicated in trial exhibit 1, which are reflected in payroll sheets also admitted into evidence, were accurate with the exception of one typographical error that was amended by agreement.[21] At the close of Plaintiffs'

---

[17] R. Doc. 67 at 5.
[18] R. Doc. 64.
[19] R. Doc. 69.
[20] *See* R. Docs. 69 & 70.
[21] R. Doc. 70. The entry for plaintiff Bryant's hours worked on December 10, 2015, incorrectly stated "257 hours"; the parties stipulated that the entry should be amended to reflect that Bryant actually worked 57 hours. *See* Exh. 1 at 13.

case and again at the close of all the evidence, the Court denied Defendants' motions for judgment as a matter of law, wherein Defendants argued that plaintiffs Berryhill, Turner, and Johnson should be dismissed for not being present to testify, and that Plaintiffs were exempt from the overtime provisions of the FLSA. After a few hours of deliberation, the jury returned a verdict in favor of Plaintiffs, finding that Defendants willfully violated the FLSA.[22] After the verdict and after the jury was excused, Defendants again moved for judgment as a matter of law on the same grounds, and the Court took the motion under advisement.[23] The Court then ordered the parties to submit post-trial memoranda addressing the outstanding issues, including the question of damages to be determined by the Court.[24] Defendants subsequently filed a renewed motion for judgment as a matter of law and motion for new trial.[25] On July 31, 2019, the Court issued an Order and Reasons denying Defendants' post-verdict/prejudgment motions as premature and because there was a legally sufficient evidentiary basis for the jury's verdict, and awarding Plaintiffs damages and attorney's fees and costs.[26] The Court then entered judgment in favor of Plaintiffs, in accordance with that order and the jury verdict.[27]

## II.    PENDING MOTION

Defendants renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and move jointly for a new trial under Federal Rule of Civil Procedure 59.[28] First, they argue that because in the written consent attached to the complaint,[29] the named plaintiff, Daniel Smith, consented to being a representative party plaintiff in a collective action against only

---

[22] R. Docs. 70 & 71.
[23] R. Doc. 70.
[24] R. Doc. 74. In the order, the Court directed the parties to address "any outstanding issues for the Court to determine **before entering judgment** (including at least the Court's determination of overtime hours, compensatory and liquidated damages, and attorney's fees and costs)." *Id.* (emphasis added).
[25] R. Doc. 77.
[26] R. Doc. 82.
[27] R. Doc. 83.
[28] R. Doc. 84.
[29] R. Doc. 1-1

Metro Security, Inc., and did not list Jarreau, the claims and judgment against Jarreau should be dismissed.[30] Second, they argue that because the Court merely conditionally certified the collective, and never issued a final certification, the opt-in plaintiffs' claims should be dismissed without prejudice to their rights to bring individual claims.[31] Third, they argue that the Court should grant them judgment as a matter of law because there is insufficient evidence to support the jury's verdict that Plaintiffs established enterprise coverage under the FLSA, in that Plaintiffs presented insufficient evidence that Metro Security, Inc. is an enterprise engaged in commerce as defined by the FLSA.[32] Fourth, Defendants argue that the jury charge on the issue of commerce and enterprise coverage[33] was incorrect and prejudicial, and that although the issue was not preserved, the Court should grant a new trial on grounds of plain error affecting substantial rights.[34] Fifth, Defendants argue that the Court should grant judgment as a matter of law in their favor because there was insufficient evidence to support the jury's verdict that Plaintiffs were not exempt from the overtime provisions of the FLSA, and that furthermore, this was a legal question which should not have been presented to the jury.[35] Finally, they argue that there is insufficient evidence to support the jury's verdict that Defendants willfully violated the FLSA, and that the Court should find they acted in good faith and refuse to award liquidated damages, so that the Court should grant judgment as a matter of law in their favor on this issue or order a new trial.[36]

In opposition, Plaintiffs first counter that 29 U.S.C. § 256 only requires that the individual claimant provide "written consent *to become a party plaintiff*" and does not require identification of all defendants.[37] Moreover, because the complaint filed by Smith identifies Jarreau as an

---

[30] R. Doc. 84-1 at 4.
[31] *Id.* at 4-10.
[32] *Id.* at 10-12.
[33] R. Doc. 71 at 7.
[34] R. Doc. 84-1 at 12-13.
[35] *Id.* at 13-14.
[36] *Id.* at 14-15.
[37] R. Doc. 85 at 1-2 (emphasis in original).

employer and defendant to the collective action, and the written consent was attached as an exhibit to the complaint, Plaintiffs argue it was clear Smith consented to become a party plaintiff to a collective action against both Metro Security, Inc. and Jarreau.[38]  Second, Plaintiffs argue that there is no requirement to file a motion for final certification in a FLSA collective action, and that it was Defendants "who were tasked with filing a motion to decertify" under the Court's order granting certification.[39]  Third, Plaintiffs argue that the evidence presented at trial was sufficient to prove by a preponderance of the evidence that Plaintiffs handled or otherwise worked with materials that had been moved in or were provided for commerce, as required by 29 U.S.C § 203.[40] Fourth, they argue that Defendants waived any objections to the jury charge at issue, and in their only objection to Plaintiffs' proposed jury charges, Defendants even cited this charge positively.[41] Fifth, Plaintiffs argue that the burden of proof on the executive exemption issue was on Defendants, and so it was Defendants who failed to provide sufficient evidence to rebut Plaintiffs' evidence that they were not exempt from the FLSA.[42]  Finally, Plaintiffs maintain that the issue of willfulness is a factual determination left to the jury which should not be disturbed because Jarreau testified that he paid Plaintiffs the lowest he could while trying to avoid overtime liability, and that the jury arrived at its decision having witnessed his demeanor and attitude during testimony.[43]

In reply, Defendants mostly reiterate their arguments on the first, second, fourth, fifth, and sixth issues, without citation to any supporting case law.[44]  On the issue of enterprise coverage, they reurge that Plaintiffs presented no evidence that the firearms or trucks were manufactured outside of Louisiana or crossed state lines.[45]  In particular, Defendants distinguish the case on

---

[38] *Id.* at 2.
[39] *Id.*
[40] *Id.* at 2-4.
[41] *Id.* at 6.
[42] *Id.* at 6-7.
[43] *Id.* at 7.
[44] *See* R. Doc. 88.
[45] *Id.* at 3-5.

which Plaintiffs rely, *Williams v. Hooah Security Services LLC*, 2011 WL 5827250 (W.D. Tenn. Nov. 18, 2011), in that the plaintiffs there presented evidence that the weapons and tools handled by the security guards were manufactured or purchased outside Tennessee.[46]

## III.    LAW & ANALYSIS

### A.  Motion and Renewed Motion for Judgment as a Matter of Law

Rule 50 of the Federal Rules of Civil Procedure requires a party to "specify the judgment sought and the law and facts that entitle the movant to the judgment" upon motion at trial before the jury renders its verdict.  Fed. R. Civ. P. 50(a)(2); *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019).  "If the pre-verdict motion is denied, then the party can renew its motion under Rule 50(b).  But the renewed Rule 50(b) is 'technically only a renewal of the [Rule 50(a) motion for judgment as a matter of law].'"  *Puga*, 922 F.3d at 290 (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985)) (bracketed language in original).  Rule 50(b) provides in part: "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  As a consequence, "[i]f a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal."  *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001); *see also In re Isbell Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014) ("By not raising this argument at trial or in its Rule 50(a) motion, [the appellant] has waived its right to bring a Rule 50(b) motion on this ground.").  The Rule 50(b) waiver is "designed to prevent a litigant from ambushing both the district court and opposing counsel after trial."  *Puga*, 922 F.3d at 290-91 (citing *Quinn v. Sw. Wood Prods., Inc.*,

---

[46] *Id.* at 4-5.

597 F.2d 1018, 1025 (5th Cir. 1979) ("When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend his case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.")) (other citation omitted).

Judgment as a matter of law under Rule 50 is warranted only where "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes reasonable jurors could not arrive at a contrary verdict." *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 248-49 (5th Cir. 2005) (quoting *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997)) (citing Fed. R. Civ. P. 50(a)). Stated differently, "[a] jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Heck v. Triche*, 775 F.3d 265, 273 (5th Cir. 2014) (quoting *Foradori v. Harris,* 523 F.3d 477, 485 (5th Cir. 2008)). Thus, to prevail on a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [its] claim." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th Cir. 2011)). "'Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

"[W]hen evaluating the sufficiency of the evidence, [courts] view all evidence and draw all reasonable inferences in the light most favorable to the verdict." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005). However, "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" remain within the province of

the jury. *Kelso v. Butler*, 899 F.3d 420, 425 (5th Cir. 2018) (quoting *Hurst v. Lee Cty.,* 764 F.3d 480, 483 (5th Cir. 2014)).

Rule 50(b) further provides that a party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."

## B.  Motion for a New Trial

Rule 59(a) provides a district court discretion to grant a new trial "on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a); *see also Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995) ("the decision to grant or deny a motion for new trial … rests in the sound discretion of the trial judge"). While the rule does not specify the grounds necessary for granting a new trial, the Fifth Circuit has instructed that "[a] new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted). A district court may also grant a new trial when the jury's verdict is logically inconsistent if, after viewing the evidence in the light most favorable to a finding of consistency, reconciliation is impossible. *See Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 343 (5th Cir. 2001); *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978) ("Answers should be considered inconsistent, however, only if there is no way to reconcile them.").

When a movant argues that insufficient evidence supports the verdict, the district court should deny the motion "unless the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (quoting *Dotson v. Clark Equip. Co.*, 805 F.2d 1225, 1227 (5th Cir. 1986)); *see also Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982) ("new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict

is against the great – not merely the greater – weight of the evidence") (quotation omitted). In contrast to the standard applicable to a Rule 50 motion, "[a] verdict can be against the 'great weight of the evidence,' and thus justify a new trial, even if there is substantial evidence to support it," and a district court may weigh the evidence when resolving whether a new trial should be granted on this ground. *Shows*, 671 F.2d at 930.

### C. Analysis

#### 1. Smith's Written Consent

Defendants first seek judgment as a matter of law on the ground that Smith's written consent listed only Metro Security, Inc., not Jarreau, as a defendant to the suit. Defendants do not request a new trial based on this issue but rather that the "claims and judgment against Mr. Jarreau … be dismissed."[47] Defendants did not raise this issue in either of their pre-verdict motions for judgment as a matter of law, or their post-verdict/prejudgment motion, for that matter. As such, they waived their right to file a renewed post-verdict Rule 50(b) on this issue. *See Flowers*, 247 F.3d at 238.

Even if they had raised it, though, their argument is meritless. Section 216(b) of title 29 of the U.S. Code provides employees a collective right of action against employers for, *inter alia*, failure to pay overtime compensation, and it requires that "[n]o employee shall be a *party plaintiff to any such action* unless he gives his consent in writing *to become such a party* and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b) (emphasis added). Section 256 specifies that the collective action "commence[s] … on the date when the complaint is filed, if [the individual claimant] is specifically named as a party plaintiff *in the complaint* and his written consent *to become a party plaintiff* is filed on such date." 29 U.S.C. § 256(a) (emphasis added). These statutes do not contain a requirement that the written consent name any or all

---

[47] R. Doc. 84-1 at 4.

defendants. Smith was named as the party plaintiff in the complaint against both Metro Security, Inc and Jarreau, and his written consent, attached to the complaint along with summonses addressed to both defendants, clearly indicated he consented to become a party plaintiff in this action.[48] Plaintiffs correctly observe that the consent-to-sue must be read in conjunction with the complaint commencing this suit to which consent was given.[49] Further, as Plaintiffs also note, "Defendants have not cited a single authority for" their assertion that the written consent must name all the defendants,[50] an assertion which is without foundation in the text of the statute in any event.

## 2. Class Certification

Next, Defendants argue that the Court's failure to issue a final certification dooms the collective nature of the action. As with the first issue, Defendants do not move for a new trial because "no 'final certification' analysis occurred," but rather ask the Court to dismiss the opt-in plaintiffs' claims as a collective action without prejudice to their right to bring individual claims.[51] Yet they did not include this issue in their motions for judgment as a matter of law during the trial, and therefore, have waived this issue too.[52]

Even if they had included decertification in their motions, Defendants had likely already waived this issue by failing to move to decertify the collective action before trial. When this Court certified the class, the order specifically stated that the Court would "revisit the issue *should*

---

[48] *See* R. Docs. 1; 1-3; 1-4.

[49] R. Doc. 85 at 1-2.

[50] *Id.* at 2.

[51] R. Doc. 84-1 at 7, 10.

[52] In their pretrial memorandum, Defendants anticipated that they "may bring a Rule 52 [presumably meaning Rule 50] motion and alternate motion to decertify at the close of the trial, similar to what was done in *Johnson v. Big Lots*, [561 F. Supp. 2d 567 (E.D. La. 2008),] if the evidence presented at trial reveals it is appropriate to do so." R. Doc. 49 at 6. Not only did Defendants not bring a Rule 50 motion on this basis or an alternate motion to decertify, but unlike the defendants in *Big Lots*, Defendants never filed a motion to decertify before trial, and so, as explained below, had likely already waived the issue. *See* 561 F. Supp. 2d at 569. Furthermore, in *Big Lots*, the court decided that "further consideration of the certification issue [was] warranted in light of the more fully developed factual record presented at trial." *Id.* at 571. Here, Defendants have not presented any factual developments that warrant reconsidering certification of the collective action.

*Defendant* choose to file a motion to *decertify* following a discovery period."[53]  *See Baldridge v. SBC Comm., Inc.*, 404 F.3d 930, 931 (5th Cir. 2005) (explaining that a FLSA conditional certification order "is subject to revision *before* the district court addresses the merits") (emphasis added); *see also Teed v. JT Packard & Assocs., Inc.*, 2009 WL 667183, at *1 (W.D. Wis. Mar. 10, 2009) ("The [defendants'] failure to [submit a motion to decertify the FLSA class by the deadline for decertification] operates as a waiver …. In other words, … defendants have waived their right to decertify the FLSA class.").

Defendants argue that without final certification the class did not have "independent legal status," and the case "could not proceed to trial as a collective action."[54]  Defendants point to *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), where the Supreme Court stated that "[u]nder the FLSA, by contrast, 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action." *Id.* at 75.  But Defendants distort this statement: the Supreme Court was contrasting collective actions under the FLSA with class actions under Federal Rule of Civil Procedure 23, which does not require plaintiffs to opt in.  The Supreme Court continued, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, … who in turn become parties to a collective action only by filing written consent with the court." *Id.*

Defendants cite two Third Circuit cases in support of their belated argument that final certification was required to proceed to trial.  The first discusses the standard for final certification. *See Zavala v. Walmart Stores Inc.*, 691 F.3d 527, 535-37 (3rd Cir. 2012) (holding that the standard is whether the proposed collective plaintiffs are "similarly situated").  The second discusses "what is a 'collective action' under the FLSA," specifically contrasting it with Rule 23 class actions. *See Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 222-26 (3rd Cir. 2016) (unlike

---

[53] R. Doc. 23 at 6 (emphasis added).
[54] R. Doc. 84-1 at 5.

under Rule 23, "the existence of a [FLSA] collective action depends upon the *affirmative participation of opt-in plaintiffs*") (emphasis added). In *Zavala*, the Third Circuit cited to a note in a Second Circuit case, *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010), which expounds on the distinctives of FLSA actions:

> Indeed, while courts speak of "certifying" a FLSA collective action, it is important to stress that the "certification" we refer to here is only the district court's exercise of the discretionary power, upheld in *Hoffman-La Roche* [*Inc. v. Sperling*, 493 U.S. 165 (1989),] to facilitate the sending of notice to potential class members. Section 216(b) does not by its terms require any such device, and ***nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents*** with the district court, even when the notice described in *Hoffman-La Roche* has not been sent***, so long as such plaintiffs are "similarly situated" to the named individual plaintiff*** who brought the action. … Thus "certification" is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful "case management" tool for district courts to employ in "appropriate cases." *Hoffmann-La Roche*, 493 U.S. at 169, 174.

*Myers*, 624 F.3d at 555 n.10 (emphasis added), *cited with approval in Zavala*, 691 F.3d at 536. Thus, the FLSA does not require a strict two-step "certification" process,[55] but rather, requires only that the plaintiffs affirmatively provide consent (opt in), unlike under Rule 23 (opt out), and that they be "similarly situated." 29 U.S.C. § 216(b). If a court, such as this one, does use the two-step process, the conditional certification *is* certification, and "[a] decertification decision would be a *revision* of the original order." *Baldridge*, 404 F.3d at 931 n.3 (emphasis in original); *see also In re Wells Fargo Wage & Hour Employ. Pracs. Lit. (No. III)*, 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014) (explaining that the Fifth Circuit does not require final certification to approve a FLSA collective action settlement).

Here, the Court certified the collective action and the opt-in plaintiffs provided their written consents. Defendants never filed a motion to decertify, which the Court clearly noted in the

---

[55] And, as noted in the certification order, neither does the Fifth Circuit. *See* R. Doc. 23 at 3.

conditional certification order was up to them. In essence, then, by Plaintiffs' ***action***, Smith's individual suit became a conditionally-certified collective suit; by Defendants' ***inaction***, conditional certification became final certification – which certainly occurred once the jury and the Court were called upon to address the merits (*Big Lots*) and a final judgment entered (*Baldridge*). When the Court certified the class, it noted that "Defendant concedes that all Post Supervisors are similarly situated."[56] It is uncontested that the Plaintiffs were all employed by Defendants as post supervisors.[57] Defendants did not dispute that the Plaintiffs were similarly situated, nor do they now. And this is the issue central to the second step of the analysis typically addressed on a motion to decertify. In sum, then, Defendants only argue, ***after*** receiving an unfavorable judgment, that the Court did not conduct a second look at certification, which they took no steps to prompt, on an issue they do not contest.

The opt-in plaintiffs properly became parties to this collective action under § 216(b), and the Court declines Defendants' belated request to dismiss Plaintiffs' claims as a collective action. Defendants cite to no authority on point that would require, or even counsel, a different result.

### 3. Enterprise Coverage

Defendants also seek judgment as a matter of law on the basis that Plaintiffs did not prove that Metro Security, Inc. is an enterprise engaged in commerce as defined by the FLSA. Once again, Defendants do not seek a new trial on this basis, nor did they include this issue in their pre-verdict motions for judgment as a matter of law. Defendants did file a last-minute pre-trial motion to dismiss on the basis that Plaintiffs' allegations were insufficient to allege "enterprise coverage" under 29 U.S.C. § 207(a)(1), but their argument was based on the second prong of the definition

---

[56] *Id.* at 5. At trial, Jarreau testified that the Plaintiffs had "basically" the same duties, which testimony substantiates Defendants' concession that Plaintiffs, as post supervisors, were similarly situated.
[57] R. Doc. 43 at 2.

set out in 29 U.S.C. § 203(s)(1)(A): that Plaintiffs had not sufficiently alleged that Metro Security, Inc. had annual gross revenue of at least $500,000.[58]  The Court denied the motion at the beginning of trial, with Defendants noting their objection to the ruling.[59]  Defendants now base their argument on the first prong of the definition: that Plaintiffs failed to provide sufficient evidence demonstrating that Defendants are engaged in interstate commerce.[60]

The FLSA's overtime provisions cover any employee "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).  This is known as "enterprise coverage."  Section 203(s)(1)(A) defines such an enterprise in part as one that

> (i)  has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii)  is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

Plaintiffs provided evidence that they were provided with Toyota vehicles and fuel to perform their jobs as post supervisors.[61]  They also provided evidence that they carried Smith and Wesson revolvers and ammunition in connection with their positions.[62]  Defendants provided no evidence that the tools and vehicles used by the Plaintiffs were produced or manufactured entirely within the state of Louisiana.  As Plaintiffs explain, in *Williams v. Hooah Security Services*, the court held

---

[58] R. Doc. 60-4.

[59] R. Doc. 69.

[60] In Defendants' motion to dismiss, they argued that the issue of enterprise coverage is not jurisdictional (R. Doc. 60-4 at 4), but in their first (and premature) renewed motion for judgment as a matter of law and motion for a new trial, they argued that it might be jurisdictional so as to avoid waiver of the issue.  R. Doc. 77-2 at 3.  In the pending motion, they do not mention the jurisdictional question at all.  The Court finds it unnecessary to decide whether this issue is jurisdictional or was waived, because there was sufficient evidence presented for the jury to find that Defendants were engaged in interstate commerce.  *But see, e.g., Chao v. Hotel Oasis, Inc.*, 493 F. 3d 26, 33 (1st Cir. 2008) (holding that enterprise coverage is not jurisdictional); *Velasquez v. Salsas and Beer Rest., Inc.*, 735 F. App'x 807, 809 (4th Cir. 2018) (same).  Under these cases, Defendants would have waived their argument about enterprise coverage.

[61] *See, e.g.,* Testimony of Washington, Bryant, Smith, and Jarreau.

[62] *See, e.g.,* Testimony of Washington, Bryant, and Smith.

that evidence that the plaintiff security guards, in the course of their employment, carried handguns and magazines purchased and manufactured outside of the forum state, was sufficient to support a finding that they were employees who "handled … materials" that had "moved in commerce." 2011 WL 5827250, at *9-10.[63] Defendants argue that unlike *Williams v. Hooah Security Services*, where it was undisputed that the firearms and magazines were manufactured and purchased outside Tennessee, here, plaintiffs "left it to the jury to divine where the [Toyota] vehicles were manufactured or produced, or simply to make an unsupported inference that it must have been outside Louisiana"[64] and that "[t]here were no specific allegations that the defendants' business was other than local."[65]

Defendants' argument is like one made by the defendants in *Juarez v. Wheels Pizza Inc.*, 2015 WL 3971732 (S.D.N.Y. June 30, 2015), where they asserted that the FLSA did not apply because their "pizza business was not engaged in interstate commerce." *Id.* at *2 n.3. There, the court pointed to the plaintiff's testimony that he had engaged in the sale of "soft drinks and beer" in his employment, explaining that "[i]t is logical to infer that these and other goods moved in interstate commerce, which is sufficient to satisfy this requirement." *Id.* (citing *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 (2d Cir. 2009), for the proposition that "the interstate commerce requirement is rarely difficult to establish because it is met by showing that two or more employees have handled materials that have been moved in commerce") (internal quotation marks and brackets omitted). Likewise, on the basis of the evidence developed at trial, it was reasonable for the jury to infer that the Toyota vehicles, Smith and Wesson revolvers, and ammunition handled

---

[63] The court in *Williams v. Hooah Security Services* thus based its decision on the "handling clause" in 29 U.S.C. § 203(s)(1)(A)(i), which has been held an independent basis to find that an enterprise is engaged in commerce or in the production of goods for commerce. *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1221 (11th Cir. 2010); *see also Brennan v. Greene's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1030 (5th Cir. 1973). This is the clause at issue here.
[64] R. Doc. 88 at 4.
[65] R. Doc. 84-1 at 11.

by Plaintiffs had moved in interstate commerce (especially without any evidence to the contrary), thereby satisfying this requirement for enterprise coverage.

### 4. Jury Charge

Defendants argue that the Court should grant a new trial based on an "incorrect and prejudicial jury charge."[66]  The charge states:

> To succeed on their claims, each of the plaintiffs … must prove each of the following facts by a preponderance of the evidence:
> …
>
> 2.    As to each plaintiff, that he or she was engaged in commerce or in the production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce that had gross annual sales of at least $500,000.00 for the relevant period ….
>
> The term "commerce" has a very broad meaning.  It includes any trade, transportation, transmission, or communication among the several states, or between any state and any place outside that state. …  An "enterprise engaged in commerce or the production of goods for commerce" means a business that has employees engaged in commerce or the production of commercial goods for commerce and has an annual gross sales of at least $500,000.00.
>
> The FLSA provides enterprise coverage for employers whose employees are engaged in "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  The term "materials" as used in the FLSA means tools or other articles necessary for doing or making something which, in the context of their use, have a significant connection with the employer's commercial activity.  For instance, a security company may be found to constitute an "enterprise" if the firearms of the company's employees are materials moved and produced in commerce, or if the employees used the firearms for performing a commercial purpose of the company, such as providing security services to its clients.[67]

The last paragraph is an explanation of the "handling clause" in 29 U.S.C. § 203(s)(1)(A)(i).[68]

Defendants argue that the charge is incorrect because the illustration of the "handling clause" ("For instance, a security company…") "is stated in the disjunctive ('or'), but the company qualifies as

---

[66] R. Doc. 84-1 at 12-13.

[67] R. Doc. 71 at 6-7.  This charge was adopted from Plaintiffs' requested jury charge no. 9.  R. Doc. 52 at 12-13.

[68] *See supra* note 63.

an enterprise under the FLSA only if **both** criteria in the instruction are met – the firearms were in the past produced in or moved interstate **and** the employees used them for a commercial purpose of the company."[69]  Defendants also argue that the instruction was "directly prejudicial to the defendants because the court did not use a neutral hypothetical, but instead focused on 'firearms,' which are directly at issue in this case."[70]

Defendants admit that they did not preserve this issue, as they never objected to this instruction either before or during trial,[71] and so instead argue that their concern amounts to "plain error" under Federal Rule of Civil Procedure 51(d)(2), which they claim is a sufficient basis to grant a new trial.[72]  In *Garza v. Caplin*, 745 F. App'x 230 (5th Cir. 2018), the Fifth Circuit addressed the denial of a motion for new trial based on an allegedly incorrect jury instruction to which the plaintiff-appellant had not objected before or during trial.  The court explained that because there was no objection, it would review for plain error, so that to overturn the verdict it would have to "find an obviously incorrect statement of law that was probably responsible for an incorrect verdict."  *Id.* at 231 (citing *Tompkins v. Cyr*, 202 F.3d 770, 784 (5th Cir. 2000)) (internal quotations omitted).  The Fifth Circuit assumed without deciding, however, that because the issue was "in the context of the district court's denial of [appellant's] motion for a new trial," the standard of appellate review would instead be "prejudicial error."  *Id.* (citing *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989)); *see also Aero Int'l, Inc. v. U.S. Fire Ins. Co.*, 713 F.2d 1106, 1113 (5th Cir. 1983) ("A new trial is the appropriate remedy for prejudicial errors in jury instructions.") (internal citations omitted).  The court explained that in the "Rule 59 context, there is prejudicial error if the jury's verdict is against the great – not merely the greater – weight of the

---

[69] R. Doc. 84-1 at 12 (emphasis in original).
[70] *Id.* at 13.
[71] Defendants only objected to Plaintiff's requested jury charge no. 10.  *See* R. Doc. 56.
[72] R. Doc. 84-1 at 13.

evidence." *Garza*, 745 Fed. App'x at 231 (internal citations and quotations omitted).

Turning to the issue at hand, the charge begins with a straightforward statement of the law: that each plaintiff had to prove by a preponderance of the evidence that he or she was "employed by an enterprise engaged in commerce or in the production of goods for commerce."[73] *See* 29 U.S.C. § 207(a)(1). The Court then explained the broad meaning of "commerce,"[74] so that it was clear that *interstate* commerce was required. The Court then included the statutory text of the "handling clause." *See* 29 U.S.C. § 203(s)(1)(A)(i). It followed this with a definition of the clause's term "materials" adopted from *Polycarpe*, 616 F.3d at 1226, as this term is not defined in the FLSA, and there is no Fifth Circuit decision construing it. Several district courts have found the Eleventh Circuit's construction of the term persuasive. *See, e.g., Landeros v. Fu King, Inc.*, 12 F. Supp. 3d 1020, 1023-24 (S.D. Tex. 2014) (reviewing term's definition against historical backdrop of amendments to FLSA); *White v. NTC Transp., Inc.*, 2013 WL 5430512, at *5 (N.D. Miss. Sept. 27, 2013) ("Once the Eleventh Circuit handed down the *Polycarpe* decision, several district courts addressed enterprise liability under the FLSA using the standards set forth."). Defendants only take issue with the illustration following this definition, which illustration was adopted from the opinion in *Williams v. Hooah Security Services*, 2011 WL 5827250, at *8-10 (applying the *Polycarpe* construction of the term "materials" in the handling clause).[75]

At the outset, then, the Court notes that the *illustration* appears in the instruction only after an undisputedly correct statement of the law. Viewed in this context, the Court does not find the illustration to amount to a plain or prejudicial error. The first clause in the illustration states that

---

[73] This was also the language used in the verdict-form question. *See* R. Doc. 70-1 at 2.

[74] This language was directly based on the Fifth Circuit Pattern Jury Instructions. *See* Fifth Circuit District Judges Association Committee on Pattern Jury Instructions, PATTERN JURY INSTRUCTIONS, CIVIL CASES § 11.24 (2014); *see also Garza*, 745 F. App'x at 231-32 (holding that a jury instruction based on the Fifth Circuit Pattern Jury Instructions was neither an "obviously incorrect statement of law" nor did it amount to "prejudicial error") (citations omitted).

[75] *See* R. Doc. 52 at 13.

"a security company may be found to constitute an 'enterprise' if the firearms of the company's employees are materials moved and produced in commerce." This merely inserts the word "firearms" into the statutory text and is alone sufficient to find enterprise coverage. Indeed, Defendants themselves state that the "inquiry for enterprise coverage under the FLSA is whether the 'goods' or 'materials' were in the past produced in or moved interstate."[76] The second clause contextualized firearms as "materials": that a security company could be found to be an "enterprise … if the employees used the firearms for performing a commercial purpose of the company, such as providing security services to its clients." This was directly adopted from *Williams v. Hooah Security Services*, where the court found that a security company's employees' firearms were "'materials' within the definition of the FLSA because they are 'articles necessary for doing something' – providing security for clients" and they were used "for Defendants' commercial purpose of providing armed security services to its clients." 2011 WL 5827250, at *9. In other words, the second clause merely illustrates the meaning of "materials" in the first clause.

Defendants' claim that this instruction presented the inquiry as "whether [the firearms] were most recently purchased intrastate,"[77] as opposed to moved interstate, contravenes its plain reading. Defendants fail to read the instruction as a whole and then distort it by implying that it can be read to teach that qualifying materials can include items confined to an intrastate transaction. When properly and fairly read, the instruction says no such thing and is a far cry from an "obviously incorrect statement of law," and further, Defendants provide no support that this instruction was "probably responsible for an incorrect verdict." *See Garza*, 745 F. App'x at 231. Defendants cite to no case holding that the instruction as a whole misstates the law. Nor do Defendants provide any evidence that this instruction prejudiced the jury, but merely assert that

---

[76] R. Doc. 84-1 at 12-13.
[77] *Id.* at 13.

the illustration was not "neutral." Again, they point to no caselaw holding any similar illustration to be non-neutral especially where, as here, it follows a correct statement of law. Defendants fail to show that any possible error or lack of neutrality in this illustration caused the "jury's verdict [to be] against the great … weight of the evidence." *Id.* Moreover, even if the illustration in the instruction could have been better drawn, the question is "not whether an instruction was faultless in every respect, but whether the jury, considering the instruction *as a whole*, was misled." *Aero Int'l*, 713 F.2d at 1112 (quoting *Mid-Tex. Comm. Sys., Inc. v. AT&T*, 615 F.2d 1372, 1390 n.16 (5th Cir. 1980)) (emphasis added). Considering the entire instruction here, Defendants have not shown that the jury was misled by it, and thus the illustration in the jury instruction is not a sufficient basis to grant a new trial.

### 5. Finding on Question of Exemption

Defendants argue that there was insufficient evidence to support the jury's verdict that Plaintiffs were not exempt from the overtime provisions of the FLSA, and that furthermore, this was a legal issue which should not have been presented to the jury.[78] They ask the Court to grant judgment as a matter of law in their favor on this issue. At trial, Defendants did move for judgment as a matter of law on this basis, preserving the issue.[79] The Court denied both pre-verdict motions after determining there was sufficient evidence to present the issue to the jury. Plaintiffs counter that it is Defendants' burden to prove that the executive exemption applies and so any insufficiency of the evidence on the issue was due to a failure on Defendants' part.[80]

In arguing that the exemption issue should not have been presented to the jury, Defendants cite to caselaw distinguishing appellate standards of review for judge-made decisions and

---

[78] R. Doc. 84-1 at 13-14.
[79] R. Doc. 69 at 2.
[80] R. Doc. 85 at 6-7.

factfinding. For example, one of the cases cited by Defendants states "that the facts necessary to a proper determination of the legal question whether an exemption to the FLSA applies in a particular case should be reviewed by the courts of appeals pursuant to Rule 52(a), like the facts in other civil bench-tried litigation." *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713-14 (1986) (holding that the court of appeals below incorrectly engaged in factfinding of its own). The relevance to this jury case of these observations from the bench-tried *Icicle Seafoods* is attenuated at best. In *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326 (5th Cir. 2000), another case cited by Defendants, the district court granted cross-motions for summary judgment having determined that an automobile dealership's former manager qualified for the administrative, but not the executive, exemption from the FLSA's overtime compensation requirements, observing:

> The decision whether an employee is exempt from the FLSA's overtime compensation provisions under 29 U.S.C. § 213(a)(1), is primarily a question of fact which must be reviewed under the clearly erroneous standard. … However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question[] of law.

*Lott*, 203 F.3d at 330-31 (citations omitted). Plaintiffs do not take issue with this legal proposition, but it does not advance Defendants' position.

A case more on point is *Radtke v. Lifecare Management Partners*, 795 F.3d 159 (D.C. Cir. 2015), where the appellate court affirmed the district court's determination that the defendant-appellants were not entitled to judgment as a matter of law on a FLSA exemption because they had, at most, shown only a conflict in the evidence before the jury. On appeal, the D.C. Circuit explained that "[w]hen the underlying facts are in dispute, 'the exemption question under the FLSA is a mixed question of law and fact.'" *Id.* at 165 (quoting *Ramos v. Baldor Specialty Foods, Inc.*, 287 F.3d 554, 558 (2d Cir. 2012)) (original brackets omitted). The district court below had asked the jury to answer questions concerning the elements of two exemptions in order to reach a verdict on whether either exemption applied, as the case "presented a pristine example of how a genuine

22

issue of material fact emerges from all the evidence, requiring its resolution by the jury." *See Radtke v. Caschetta,* 2014 WL 11802567, at *3, 6 (D.D.C. 2014).

Here, the facts underlying the elements of the executive exemption were disputed,[81] and so just like the district court in *Radtke*, this Court asked the jury to resolve the factual dispute, and by doing so, reach a verdict on the issue. In order for the jury to do this, this Court instructed the jury on the elements of the executive exemption,[82] following the Fifth Circuit Pattern Jury Instructions, which state in pertinent part:

> If the case involves a dispute about whether an employee is exempt from the FLSA's overtime requirement, ***the jury should be instructed on the elements of the claimed exemption***. The elements of the exemptions are at 29 C.F.R. § 541.1 *et seq.* The employer has the burden of proving an overtime-pay exemption. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002).

PATTERN JURY INSTRUCTIONS, CIVIL CASES § 11.24 (emphasis added). Only if the jury found that Defendants had proved each of the elements by a preponderance of the evidence would the exemption apply. In other words, the "ultimate legal question" depended on the jury's resolution of each element. Finally, it is difficult to understand how Defendants believe the exemption question should not have been before the jury when the Court's verdict-form question[83] was *adopted verbatim* from the Fifth Circuit Pattern Jury Questions. *See id.* (Jury Question No. 4).

Defendants bore the burden of proving that Plaintiffs were exempt from the overtime requirements of the FLSA. *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018). Therefore,

> [employers, Defendants here] bear a heavier burden in convincing this court to override the jury's verdict. As stated by the Third Circuit:
>
> > It is rarely appropriate to grant a directed verdict or judgment n.o.v. in favor of the party having the burden of proof; such action is reserved for those

---

[81] R. Doc. 43 at 2.
[82] R. Doc. 71 at 9-10.
[83] *See* R. Doc. 70-1 at 2.

extreme circumstances where the effect of the evidence is not only sufficient to meet his burden of proof, but is overwhelming, leaving no room for the jury to draw significant inferences in favor of the other party.

*Radtke*, 795 F.3d 159, 165-66 (quoting *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990)). In reaching a verdict as to whether the executive exemption applied, the jury had to determine whether Defendants proved that each plaintiff is an employee (1) who is compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to hiring, firing, advancement, promotion or other change of status of other employees are given particular weight.[84] Only elements (2) and (4) were contested.[85] This Court has already stated that there was sufficient evidence to support the jury's verdict,[86] but will examine each contested element in turn.

### a. *Primary duty*

As the jury was instructed,[87] "[t]he term 'primary duty' means the principal, main, major or most important duty that employee performs." *See* 29 C.F.R. § 541.700. Various uncontested facts showed that Plaintiffs engaged in several activities that would be included under the term "management,"[88] such as training other employees.[89] Defendants emphasize some of these same activities in arguing that Plaintiffs' primary duty was management.[90] Plaintiffs do not deny they

---

[84] R. Doc. 71 at 9 (adopted from 29 C.F.R. § 541.100).
[85] R. Doc. 43 at 2.
[86] R. Doc. 82 at 8.
[87] *See* R. Doc. 71 at 10.
[88] *See* 29 C.F.R. § 541.102 for an inexhaustive list of activities. The entirety of this list was included in the jury instructions. *See* R. Doc. 71 at 11.
[89] R. Doc. 43 at 2.
[90] *See* R. Doc. 84-1 at 13.

engaged in some management activities in their employment with Defendants, but rather emphasize that they "spent ninety percent, or more, of their time on security guard work versus management activities."[91]  Plaintiff Washington, for example, testified that his primary task on a typical day was to patrol the neighborhood, ensure there was sufficient gas in the vehicle for the next person coming on shift, write any reports of any calls, and report to the office; that post supervisors including himself patrolled 95 percent of the day and the rest of the day involved maintenance paperwork; and that it was his responsibility to make sure other employees were at the post on time, to turn in timesheets for these employees, and to train new hires.[92]  Plaintiff Norbert testified that he patrolled 90 percent of the time and that he did not determine which employees worked on his post or their hours.[93]  The other plaintiffs' testimony at trial was similar. "An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive."  29 C.F.R. § 541.106.[94]

Defendants also argue that plaintiffs' counsel confused and misled the jury by "asking the plaintiffs whether they wore a suit and tie to work or carried a briefcase."[95]  Defense counsel never objected to these questions, nor are they objectionable; the Court is confident the jury understood the point plaintiffs' counsel was making in drawing this picture, especially where the jury was instructed in full concerning the element of primary duty.  Notably, then, plaintiffs' counsel also asked the testifying plaintiffs, again without objection, "What was your primary task?"  In response, plaintiffs testified as indicated above.  The jury was neither misled nor confused. Regardless, it was ***Defendants*** who bore the burden to prove to the jury that Plaintiffs' primary

---

[91] R. Doc. 85 at 7.
[92] Testimony of Washington.
[93] Testimony of Norbert.
[94] This was included in the jury instructions.  *See* R. Doc. 71 at 12.
[95] R. Doc. 84-1 at 13.

duty was management; attacking the questions posed by plaintiffs' counsel will not suffice to carry this burden. There was sufficient evidence to let this question go to the jury and to support the jury's verdict. It is not the task of this Court to reweigh the evidence, which is not overwhelmingly favorable to Defendants in any event.

### b. *Authority to hire or fire, or recommendations given particular weight*

Defendants argue in conclusory fashion that Plaintiffs "had authority to write up and discipline employees on their posts, and could recommend termination of employees, and their recommendations were given substantial weight."[96] Yet plaintiff Washington, for example, testified that he did not hire, fire, or discipline other employees; that while he would write up other employees, he would not recommend disciplinary action nor participate in discussions or meetings regarding the write-ups; and that he was never asked his opinion or recommendation about hiring or firing an employee.[97] Plaintiff Norbert also testified that he did not hire or fire employees, nor did he have the ability to discipline employees; and that when he wrote up employees he was never asked his opinion or recommendation as to hiring, firing, or the course of discipline in connection with a write up.[98] Norbert clarified that, as he was using the term, disciplining employees meant helping to correct, punish, or suspend them, while writing them up was only writing down what the employees did. The other testifying plaintiffs' testimony was similar. The task of this Court is neither to determine witness credibility nor to reweigh the evidence. There was sufficient evidence on this element to go to the jury.

In viewing all evidence and drawing all reasonable inferences in the light most favorable to the verdict on the exemption question, the Court cannot say that "the facts and inferences point

---

[96] *Id.*
[97] Testimony of Washington.
[98] Testimony of Norbert.

so strongly and overwhelmingly in favor of [Defendants to permit this Court to conclude] that …

reasonable jurors could not arrive at a contrary verdict." *Arsement*, 400 F.3d at 248-49 (quoting

*Bellows*, 118 F.3d at 273 (citing Fed. R. Civ. P. 50(a)). The motion for judgment as a matter of

law on this issue is denied.

### 6. Willfulness

Finally, Defendants argue that there is insufficient evidence to support the jury's verdict

that they willfully violated the FLSA, and that the Court should either grant them judgment as a

matter of law on this issue, dismissing Plaintiffs' claims, or order a new trial.[99] Defendants admit

that willfulness is a question of fact left to the jury, but argue that "a district court may take the

question from the jury and grant a Rule 50(a) motion for judgment as a matter of law if there is no

legally sufficient evidentiary basis for a reasonable jury to find for [Plaintiffs]."[100] Defendants did

not, however, include this issue in their pre-verdict motions for judgment as a matter of law, and

thus the Court will only consider whether it is a sufficient basis to order a new trial. Defendants

must demonstrate that the jury's finding of willfulness is against the great weight of the evidence.

An employer willfully violates the FLSA if it "either knew or showed reckless disregard

for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe*

*Co.*, 486 U.S. 128, 133 (1988).[101] Defendants argue that they "took measures to ensure compliance

with the FLSA by paying the amount required, of $455/week,"[102] and that "plaintiffs presented

absolutely no evidence of actual awareness by defendants that they were in violation of the Act."[103]

Plaintiffs counter that "Mr. Jarreau testified that the reason he paid $455.00 per week was that was

---

[99] R. Doc. 84-1 at 14-15.
[100] *Id.* at 14 (internal quotation marks and citation omitted).
[101] This was the standard included in the jury instructions on this issue. *See* R. Doc. 71 at 13.
[102] R. Doc. 84-1 at 15.
[103] R. Doc. 88 at 7.

[the] lowest he could while trying to avoid overtime liability" and thus "he knew what the FLSA was and was trying to skirt the edges."[104]  Furthermore, they argue that the "jury witnessed [his] body language, demeanor, and observed his flippant attitude in response to questions" at trial.[105]

All of these arguments were made to the jury for its consideration in weighing the evidence. Even if there was no evidence of "actual awareness" of a violation presented, actual knowledge is not required for willfulness; reckless disregard is sufficient.  There was sufficient evidence to allow the question of willfulness to go to the jury, and this Court cannot say that the jury's verdict is against the great weight of the evidence.  The Court will not disturb the jury's finding and therefore denies Defendants' motion for new trial.

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' renewed motion for judgment as a matter of law and motion for new trial (R. Doc. 84) are DENIED.

New Orleans, Louisiana, this 9th day of December, 2019.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[104] R. Doc. 85 at 7.
[105] *Id.*